Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
1900 Camden Ave, Suite 101
San Jose, California 95124
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: service@moorelawfirm.com
tanya@moorelawfirm.com

Attorney for Plaintiff
Francisca Moralez

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCISCA MORALEZ,<br><br>Plaintiff,<br><br>vs.<br><br>CASEY'S AUTO BODY, INC.; PATRICIA A. CASEY, Trustee of THE CASEY FAMILY SURVIVOR'S TRUST A; MICHAEL G. CASEY, Trustee of the MICHAEL G. CASEY AND ROXANNE M. CASEY FAMILY TRUST; ROXANNE M. CASEY, Trustee of the MICHAEL G. CASEY AND ROXANNE M. CASEY FAMILY TRUST;<br><br>Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER THE AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1. This is a civil rights action by plaintiff FRANCISCA MORALEZ ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

Casey's Auto Body
4515 O'Hara Ave
Brentwood, California 94513
(hereafter "the Facility")

2. Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

costs, against CASEY'S AUTO BODY, INC.; PATRICIA A. CASEY, Trustee of THE CASEY FAMILY SURVIVOR’S TRUST A; MICHAEL G. CASEY, Trustee of the MICHAEL G. CASEY AND ROXANNE M. CASEY FAMILY TRUST; ROXANNE M. CASEY, Trustee of the MICHAEL G. CASEY AND ROXANNE M. CASEY FAMILY TRUST (hereinafter collectively referred to as “Defendants”), pursuant to Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) (“ADA”) and related California statutes.

## II. JURISDICTION

3. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5. Plaintiff’s claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court, Northern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV. PARTIES

7. Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8. Plaintiff suffers from rheumatoid arthritis and is substantially limited in her ability to walk, and must use a wheelchair for mobility. Consequently, Plaintiff is “physically disabled,” as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V. FACTS

9. The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10. Plaintiff lives less than ten miles from the Facility and visited the Facility on or about October 30, 2025, February 27, 2026, March 9, 2026, May 29, 2026, and June 17, 2026, to obtain estimates and have auto body work performed on her vehicle. During Plaintiff's visits to the Facility, Plaintiff personally encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. These barriers include, but are not necessarily limited to, the following:

a) The accessible parking at the Facility was confusing and difficult to identify. Although there appeared to be one parking space with disabled parking signage, the space and adjacent loading area were not sufficiently wide to accommodate Plaintiff's wheelchair-accessible van and the deployment of its ramp. Additionally, vehicles that do not display disabled parking placards frequently park in the space, creating further confusion as to whether the space is in fact designated and maintained as an accessible parking space.

b) Plaintiff was forced to park in an extremely sloped area because Plaintiff could not identify another suitable accessible parking location. The excessive slope made it difficult for Plaintiff to maintain balance and safely enter and exit the vehicle.

c) On one of Plaintiff's visits, Plaintiff was picked up in a wheelchair-accessible van. The driver attempted to use the designated disabled parking space, but the space was not wide enough to deploy the van's wheelchair ramp. The parking area was also excessively sloped, uneven, and riddled with cracks, making it difficult and painful for Plaintiff to enter the van.

d) The accessible parking area and surrounding surfaces contained numerous cracks, gaps, uneven surfaces, and excessive slopes, making it difficult and painful for Plaintiff to maneuver and creating an unsafe

path of travel.

e) The path of travel between the parking area and the Facility's front entrance contained cracks, gaps, uneven pavement, and sloping surfaces, making it difficult and painful for Plaintiff to safely travel to and from the Facility.

f) There was no safe accessible path of travel between the Facility and neighboring businesses. The route Plaintiff used to access a neighboring business included a steep and narrow ramp, as well as numerous cracks, gaps, and uneven surfaces. Plaintiff experienced difficulty and pain traveling both up and down the ramp.

g) The Facility's entrance door was excessively difficult for Plaintiff to open and maneuver through. During Plaintiff's February 27, 2026 visit, the door struck Plaintiff while entering and again while exiting the Facility.

h) Mats located along the entrance path of travel were difficult for Plaintiff to maneuver over and further interfered with Plaintiff's ability to safely enter and exit the Facility.

i) The entrance threshold was excessively high and difficult for Plaintiff to maneuver over.

j) Although the Facility appeared to have a lowered or cut-out portion of the transaction counter, that portion of the counter was obstructed and not accessible or made available for Plaintiff's use.

k) Because Plaintiff could not use the lowered portion of the counter, Plaintiff was directed to conduct business with the receptionist at a high counter. The height of the counter made it difficult for Plaintiff to maintain eye contact and communicate with the receptionist and caused Plaintiff pain and discomfort in the neck.

l) The electronic tablet used to review and sign documents was positioned

on the high transaction counter, making it difficult for Plaintiff to see and operate. During Plaintiff's February 27, 2026 visit, Plaintiff was required to use the device to authorize repair work but had difficulty seeing the information displayed and could not adequately see what Plaintiff was signing.

m) The restroom toilet-seat-cover dispenser was mounted too high and outside of Plaintiff's accessible reach.

n) The restroom paper towel dispenser was mounted too high and was difficult for Plaintiff to reach and use.

o) The restroom soap dispenser was positioned too high and was difficult for Plaintiff to reach and use.

p) Objects and other items obstructed the accessible space and path of travel around the restroom sink and toilet, interfering with Plaintiff's ability to approach and use the restroom fixtures.

q) The restroom toilet was positioned too low, making it difficult and painful for Plaintiff to use.

r) The restroom grab bars were positioned or configured in a manner that made them difficult for Plaintiff to reach and use.

s) During Plaintiff's initial visit on October 30, 2025, Plaintiff attempted to use the restroom while waiting for an estimator but encountered the foregoing barriers, which made use of the restroom difficult and painful.

t) When Plaintiff returned to the Facility on February 27, 2026, after the insurance company assigned the repair work to the Facility, Plaintiff again encountered the same accessibility barriers. Plaintiff needed to use the restroom but refrained from doing so because Plaintiff knew from the prior visit that the restroom was not accessible.

u) On March 9, 2026, Plaintiff returned to the Facility and continued to encounter substantially the same accessibility barriers, including

inaccessible parking and paths of travel, uneven and sloped surfaces, and an inaccessible transaction counter.

v) Plaintiff was required to return to the Facility on May 29, 2026, after the paint on a bumper previously installed by the Facility began peeling. Plaintiff returned to discuss the defective repair and arrange for the Facility to correct the work, thereby requiring Plaintiff to again encounter the Facility's accessibility barriers.

w) On June 17, 2026, Plaintiff returned to the Facility to drop off the vehicle for additional repair work. In connection with the drop-off, Plaintiff was required to use the Facility's key-drop system, but the key-drop slot was positioned in a manner that made it difficult for Plaintiff to reach and use.

11. There may exist other barriers at the Facility which relate to Plaintiff's disabilities, and she will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to her disabilities removed to afford her full and equal access.

12. Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13. Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

//

14. At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 ADA Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

15. Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated or temporary interruptions in access due to maintenance or repairs.

## VI. FIRST CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

16. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

17. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18. Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

19. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21. Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22. In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

Failure to Design and Construct an Accessible Facility

23. Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA.

24. The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25. Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

//

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

Failure to Make an Altered Facility Accessible

26. Plaintiff alleges on information and belief that the Facility was modified after January 26, 1993, independently triggering access requirements under the ADA.

27. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28. Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

Failure to Modify Existing Policies and Procedures

29. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30. Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

Failure to Maintain Accessible Features

31. Defendants additionally violated the ADA by failing to maintain in operable working condition those features of the Facility that are required to be readily accessible to and usable by persons with disabilities.

32. Such failure by Defendants to maintain the Facility in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

//

33. Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

34. Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII. SECOND CLAIM

### Unruh Act

35. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

36. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

37. California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

38. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

39. Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

40. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

41. Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of $4,000 for each offense.

42. Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

//

//

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

43. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

44. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

45. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

46. Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

47. Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.
2. Statutory minimum damages under section 52(a) of the California Civil Code according to proof.
3. Declaratory relief finding that Defendants violated the ADA for the purposes of Unruh Act damages.
4. Attorneys' fees, litigation expenses, and costs of suit.[2]
5. Interest at the legal rate from the date of the filing of this action.
6. For such other and further relief as the Court deems proper.

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

Dated: 08/21/2026

MOORE LAW FIRM, P.C.

*/s/ Tanya E. Moore*
Tanya E. Moore
Attorney for Plaintiff
Francisca Moralez

# VERIFICATION

I, FRANCISCA MORALEZ, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 08/21/2026

*/s/ Francisca Moralez*
Francisca Moralez

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that her concurrence in the filing of this document and attribution of her signature was obtained.

*/s/ Tanya E. Moore*
Tanya E. Moore
Attorney for Plaintiff,
FRANCISCA MORALEZ